My name is John Pope and I represent the petitioner in this case, Mr. Leonel Poblete Mendoza. May it please the Court. This case is in front of this Court. It has been to the Board of Immigration Appeals twice. The first time it was the decision of the immigration judge was vacated and remanded based on a finding of res judicata that barred the second NTA in the case. And the IJ at Florence terminated the proceedings. The second time the Board found that on a number of issues, mainly the vacature of the second conviction, which resulted in the second NTA, was rehabilitative, and so it was still effective for immigration purposes. Therefore, the petitioner in this case is appealing both those determinations and those are the main issues. The first proceedings in this case were held at Eloy, Arizona, where the immigration judge granted cancellation and removal under Section 240AA of the Act and terminated the proceedings. The basis of the removal order or the finding of removability was based on a controlled substance offense, not a crime involving moral turpitude. The Respondent had a 2003 conviction for shoplifting, which we have or is a crime involving moral turpitude. However, during the proceedings, when the testimony was taken in the cancellation of removal or the reliefs portion of the proceedings, the petitioner testified to the facts and circumstances of that conviction, and the government presented documentary evidence, mainly in the form of what is commonly known as a rap sheet, and this was done to show the negative equities. For in a cancellation of removal hearing, the immigration judge, as part of his responsibility, is to weigh the positive equities against the negative equities to determine whether or not this petitioner is qualified or deserving of another chance to stay in the United States, a grant of cancellation of removal. Now, it is our position that the testimony and the evidence produced in this case triggered the res judicata bar, because even though the government could not have charged this offense, he was a long-term permanent resident, therefore, he was not subject to removal for one crime involving moral turpitude, this fact of this conviction was used in order to show the negative aspects of this petitioner's life and to show that he was. But by your own admission, counsel, it did not qualify to bar him from the country. It would not, Your Honor. But it was used and it was known to the government. Therefore, if you look at this Court's precedent decisions in Ramon Sepulveda and in Bravo-Pedroza, the government should have been barred from using that in a second proceeding, which is what they did back in. But you just told us that they couldn't use it in the first proceeding, even though it was mentioned and acknowledged. It could not be used. How could it be barred from using it in the second proceeding if the government legally could not use it in the first proceeding? When you look at the nature of these proceedings, how bifurcated they are, the first part of the proceeding being removal, the second part being relief, they were precluded from using it in the removal part of the proceeding because of the nature of the offense. It was one CIMP. The man had more than five years in the United States, so he needed two in order to be removable. However, it was used in the second part of this bifurcated procedure, the relief setting, so that the issue was raised, the issue was known, and therefore, those facts were – should have been excluded from the second proceeding, which the immigration judge agreed with. In fact – In the second proceeding, it was used in the question of removal. Is that right? Yes, Your Honor. It would have been. You described two parts to this bifurcated procedure. Give me the way that you titled them again. Yes, sir. In the first part of any immigration removal hearing, you must decide whether or not the individual is removable. Right. If he is not, then the proceedings will be terminated. If the individual is removable, the second part of the procedure says, is there any relief available to this individual? Right. And in the first proceeding, the question of his shoplifting was raised at the relief stage and not at the removability stage. It was not charged in the NTA, Your Honor. Right. And here it was used in the removability because now you had two crimes involving moral turpitude. That's correct. In effect, your client got a second chance here. Yes, Your Honor. It didn't work out well. You could say that, sir. And so the second time it was used in the removability because now he had a second crime involving moral turpitude. But that is exactly our point, that it should not have been used because it had been waived by the cancellation of removal. Well, I don't know how it could be waived. The government could not have relied on it the first time. So they didn't rely on it in the removability phase of that proceeding. But they did use it in the relief part of it. It was mentioned. But why would that bar the government from using it a second time if they could not have used it the first time? Because why is that res judicata? Why is that a matter decided and disposed of? The whole purpose is so that we don't have to revisit things twice. There's no rule against mentioning things twice. But it was used, Your Honor. And that would be our point. At the relief stage. And that is a part of the proceeding. Therefore, the use of the conviction and the subsequent grant of cancellation of removal or the pardon or waiver would have disposed of that as a conviction for which he could have been removed in the future. That's our whole position. That it would be barred as identified in Bravo-Pedroza. The facts known to the government could have been raised, were raised. Therefore, they should be barred in a second proceeding. And I would like to point out to the Court, I would like to reserve two minutes for rebuttal. As to the issue of vacature. Nath v. Gonzales, a case that this Court announced back in, I believe it was 2007, places the burden of proof squarely on the government to show that the vacated conviction was done solely for rehabilitative purposes. If you review the administrative record of this case, there is absolutely no evidence in the record that would show the government carrying its burden of proof. Therefore, we would submit to the Court that given that fact. Except that your client didn't make any argument to Arizona as to why they should vacate his shoplifting, except that he had served the sentence. Well, that is a requirement under 13901 to 13907. There's a number of statutes, principally 13901, which lay out the procedure for going forward with vacature in the State of Arizona. It does not require that it be rehabilitative. You could bring it on a constitutional basis. You can bring it on error. But there is no record anywhere as to how the government carried its burden of proof. How would the government, what would the government have had to have come forward in here to satisfy the burden? They would have to show that the only reason was for rehabilitation. How could they possibly show that? Other than by showing the papers the grounds on which you filed for vacature? I wouldn't want to speak for the government in how they would do that, sir. No, but I'm now asking you. I understand that we put the burden on the government. How can the government possibly prove what your client's motivation is except to cite his official documents? They could have asked him on cross-examination questions regarding this at the hearings. There were three hearings in this case. The government examined this witness on three different occasions. That would be the only other way other than the documentary evidence, and the documentary evidence is neutral as to the reason. And I've gone over my mind. We'll allow you another minute of time. Thank you, sir. Good morning, Your Honors. May it please the Court. My name is Eric Anderson, representing the Attorney General. In 2003, Petitioner was found removable on the basis of a Utah simple possession of a controlled substance offense. The immigration judge, as authorized by Congress, canceled his removal at that time, allowing him to remain in the country despite the Utah simple possession offense and the shoplifting offense, which has been discussed. He was advised at the time that this was his one opportunity for cancellation of removal. Two years later, he committed a new offense and pleaded guilty to an Arizona charge of solicitation to possess marijuana for sale. He was charged with removability again on the basis of two crimes of moral turpitude, and the Board has now found that Petitioner in fact has two crimes involving moral turpitude and that this fact is not changed by the State court vacator following the completion of his probation. Those decisions are correct, and the petition for review should be denied. To highlight, the two crimes involving moral turpitude here are the shoplifting conviction and the 2006 Arizona solicitation to possess marijuana for sale. Petitioner has not disputed that the 2006 solicitation to possess marijuana for sale can be counted in that the fact the conviction still exists and would establish half of the government's burden to establish removability. The sole issue here is the shoplifting conviction. The Board has held in matter of balderas that in circumstances like this one, an alien can be found removable on the basis of a new conviction and a prior conviction known in a previous proceeding. This Court approved that rule in Molina-Amezcua, and Petitioner has not established that Bravo-Pedroza undermined or silently reversed the Molina-Amezcua holding. As I discussed in my brief, in fact, in Bravo-Pedroza, what you had was three stages. A first stage in which an alien was found removable on the basis of two crimes involving moral turpitude. A second stage where a — but received relief and was allowed to remain. A second stage in which the alien was charged, I believe it was an aggravated felony, or perhaps a drug conviction, in any event, not related to crimes involving moral turpitude. When the government lost on that claim, it did not attempt to reopen to re-plead, and this Court held that because the government failed to reopen, that it was barred from proceeding in a third case by alleging that the previous offenses were crimes involving moral turpitude. But, in fact, the Court indicated that the government, if the second proceeding had not become final, the government would have been allowed to bring a claim of crimes involving moral turpitude on all of the preceding convictions. To turn to the vacator question, this Court has placed the burden on the government so that when the record is silent or ambiguous, the government has failed to establish its burden to establish removability. Here, the record is neither silent nor ambiguous. As we pointed out in our brief, the record establishes the reasons Petitioner presented to the Arizona court. Although he now suggests that we should have cross-examined him in his hearing before the immigration judge, in fact, it is not Mr. Poblete-Mendoza's motivations in seeking the vacator that matter. What matters is the State court's reasons for granting the vacator. And so I'm not sure what cross-examination would have indicated at all about that. The evidence in the record, on the other hand, does indicate that under Arizona's scheme for vacating convictions following completion of probation, Petitioner asked for and received a State court vacator. There is a separate Arizona scheme with a separate procedural rule that say what you have to ask for if you are claiming a constitutional violation. Petitioner made no reference to any of that in his papers to the State court. Unless the Court has any questions, we believe this case is controlled by the prior decision. Thank you, counsel. Roberts. Thank you. Mr. Pope. I just want to come in for the break. The government in their briefs relies heavily on matter of balderas. Matter of balderas, which is 20INN decision 389 from the BIA 1991, states very specifically that when you have a situation like this where you have two crimes involving moral turpitude, one and two proceedings, a second proceeding charging with a second crime involving moral turpitude and one that was dealt with in the first instance, the Board said unless these were previously undisclosed, you can't use the first conviction in the second matter. And that was what the immigration judge at Florence in the second proceeding relied very heavily on. He actually held an evidentiary hearing with Mr. — with the Petitioner in order to adduce whether or not. What — what in that — in the balderas case, what was decided about the CIMT in the first proceeding? The — in the first proceeding, the — I believe he was — Did the IJ decide that it didn't qualify? Yes. Okay.  In which matter, sir? In the first proceeding in your client's case, no judgment was ever reached by either an IJ or by the BIA that the CIMT was not a qualifying offense. There was no reason to do that. It would have been dicta because you didn't have two CIMTs. Right. In the first case. So nobody ever decided, in this case in the first proceeding, what was decided in balderas in the first proceeding. Yes, sir. In the balderas case, the judgment that the CIMT was not a qualifying offense was virtually law of the case. That would be — And that would be a proper invocation of the res judicata rules. We don't really have a law of the case ruling on that your — that the CIMT here did not qualify, did we? In the first case. We do in the second case, where the IJ made that specific determination in saying, because it was dealt with in the first case, in the cancellation stage, that it would not qualify as a second CIMT. And that was overruled by the BIA. That's correct, sir. Thank you. Okay. I think we understand. Thank you very much. We appreciate the arguments of both counsel. Pobleta-Mendoza is ordered submitted.
judges: Gwin, Hug, Bybee